Z, could we call our case, please? People v. Alfred Downing. Would the attorneys presenting argument today please step forward and introduce yourselves for the record? Good morning, Your Honors. Chris Perkey with the Office of the State Appellate Defender for Alfred Downing. Good morning, Your Honors. Assistant State's Attorney Alan Spelberg representing the people of the State of Illinois. Nice to see you again, Mr. Spelberg. Thank you, Your Honors. Justice House sends his regrets. He was unable to join us. He will be listening to the recording. And a reminder that that microphone is for recording purposes. In fact, that's only what it's for. It's not for amplification. So if you could please keep your voices up during argument, we would appreciate it. We are here on a petition for rehearing. And so you would be going first anyways, Mr. Perkey, but you'd be going first this time as well. That's my understanding. Is that yours? Okay. Well, good. So let's do 15 and 15 with the understanding, as always, that we can be a little flexible. This is an interesting issue today. Mr. Perkey, I assume you want to reserve a few minutes? I do. Okay. That'd be great. All right. Thank you very much, Mr. Perkey. You have the floor. May I please the court, counsel? In this court's original order, written order, it correctly found that my client both made a pro se post-trial claim with an effective assistance of trial counsel, and that that claim was brought to the trial court's attention, albeit through a PSI. As your honors are well aware, for the last at least 15 years, the Illinois Supreme Court has repeatedly said that a defendant doesn't have to do anything more than ensure that his claim is brought to the court's attention in order to warrant a judicial inquiry into the factual basis of that claim. But did he bring it to the court's attention? He did, your honor. I think that, well, I have two responses to that, your honor. First is that my client, by making a statement for the purpose of a report that's going directly to the trial judge, I think it's clear that he intended for the judge or knew that the judge would be made aware of that claim. And second, your honor, I don't think that- You think the defendant knows that when he's being interviewed by the probation services officer that the court is going to be reading a description of what he said? I think that when he's being interviewed for the purpose of a report that he does. But also, I'm not sure that inquiring into what the defendant knows about the Krankel procedure or knows that there's this judicially created process that was created in the 80s and there's this body of case law that's been created since then. I don't think that- We're not talking about knowledge of Krankel. What we typically say is that the defendant, some defendants, many defendants, seem to have some idea that they're allowed to say something to the judge. Hey, my lawyer screwed up. I did something wrong. We're incredibly lenient on how they communicate that. We can all agree on that, I'm sure. He could write a note. He could nudge his counsel and make him say it. He could write him a letter. He can stand up in allocution and say it. But in all of those cases, he is taking some affirmative step to manifest an intention to bring it to the court's attention, however inartfully, right? And here, did he do that? I mean, he complained to his probation officer, probation services officer, for the purposes of PSI, but then he stood in court silent. He was even brought up in court, right? And the prosecutor literally said, look at page five of the PSI and here's what he says. And he still doesn't say anything when given the opportunity. So how do we distinguish between somebody who wants to bring this to the attention of the court and someone who's just blown off steam? Uh, I have a few responses to that as well, Your Honor. The first is that, um, I don't know that defining the defendant's intent is actually part of the crankle inquiry process. I think that, um, if you look to what the crankle, what the focus of the language is by the Illinois Supreme Court is that whether the claim is actually brought to the court's attention. I don't know that somebody who got sentencing, for example, just says, you know what, my attorney really did a bad job. There's no question that that requires a crankle inquiry. But I don't know in that case that anyone's, you know, clearly blowing off steam or maybe just hoping for a lower sentence in that case. I think that where the central purpose of crankle, as this court recognized in its order, according to the Illinois Supreme Court, is to promote consideration of these ineffectiveness claims, um, in order to develop the record on appeal so that, um, I'm sorry, in order to develop the record, uh, to limit issues on appeal. But isn't, and I'm sorry, I should have let you go, but I'm just concerned that here we have comments made, um, to a probation officer, and then even in court when defendant is asked, do you want to testify? I mean, that's the perfect time for him to say, not only do I want to testify, I have some other witnesses that I wanted to testify, and we're not getting any place with this. Well, I'll go back to what, uh, Justice Ellis mentioned, is that, um, in this particular case, at least, my client, the fact that my client complained about his attorney was used against him as an aggravating factor of sentencing. So the prosecutor didn't just say, oh, by the way, he made this ineffectiveness claim. He said, he made this ineffectiveness claim, and it shows a lack of remorse, and therefore, you should jack up the sentence because it should, because, because of it, it showed a lack of remorse. So, um, so in this case, of course my client didn't bring up the, right before he's about to be sentenced an allocution. Uh, you know, of course he didn't bring that fact up again. Um, and, and again, the court didn't ask him about his claims. The court didn't say, you know what, I noticed that you made some claims of ineffectiveness. Um, would you like to expand on that? The court just gave him his normal statutory right to allocution and sentencing, whichever defendant is entitled to. Um, and especially here, Your Honor, where, again, in addition to the fact that it was used as an aggravating factor, uh, by the state, uh, then the state even told the judge what page it was on, and at that point, the judge still didn't say anything about the claim. So my client knew that the judge knew about his claim. So the onus then should always be on the judge. I think as long as the judge, according to the Supreme Court, you know, the defendant doesn't need to do any more than bring it to the court's attention. I think, uh, at least in this narrow situation with the PSI, where, where a, where A, a judge has to read the PSI, it's statutorily required, uh, and B, where, in this case, my client was making statements for the purpose of the PSI, I think that, uh, the central, uh, sort of question for whether a crankling crew is, is required is whether a claim of ineffective assistance of counsel made by the defendant is brought to the trial judge's attention. And as this Court acknowledged in its written order, this has been, you know, this crankle procedure has been liberally construed by the Illinois Supreme Court. It was initially just, you know, post-trial motions. It's since been expanded to sentencing hearings, notification hearings, guilty pleas. Um, it was originally, um, a written pro se motion. The Court has since made it very clear, the Illinois Supreme Court has made it since made it very clear that you no longer have to, um, even do a written motion, as, as Your Honor mentioned, in letters, oral statements, um, and, and in people v. Ayers, even sort of a bare claim, my client did a bad job, my client was ineffective with no factual sort of detail whatsoever was held to require a crankle inquiry. And again, the perp, the reason why it's so broad is because the purpose of the crankle inquiry is to, uh, promote consideration of these claims. And other Illinois courts, uh, in this Court, uh, in particular, although not this panel, uh, has found that, um, a defendant does not have to personally bring his claim to the judge's attention. Um, in people v. Jackson, for example, Your Honor, which I cited in my, my briefs, um, in that case, the defendant made a claim to the ARDC, and then in court, his attorney, not him, brought that to the judge's attention. That was found to require a crankle inquiry. There are other cases where the defendant doesn't say anything, doesn't present any communication to the court, but where the, where defense counsel either admits or indicates through his arguments that he was ineffective. And those have been found to require a crankle inquiry. And there's other situations. But that, that's before the Supreme Court, right? It is, Your Honor. Yes. Um, but in that case, this Court found that, um, it's very important. It's not a situation where the defendant is saying anything. Right. In this case, it's, it's not even as far afield as, as, as that is. In this case, we, there's no question this Court found my client made claims of ineffective assistance. There's no question the judge knew about the claims, either from reading the PSI or from being made aware of them by the state's attorney. So what do we do with Harris? So... Is Harris wrong? I think that Harris has, uh, been outpaced by Illinois Supreme Court, uh, case law and other, and a body of law since then. Uh, in Harris, they specifically held that they're holding that a claim could not be raised in a PSI was, was based on Reed. And when I say that, I don't mean that they, they just cited Reed. They said specifically, our holding is based on Reed, and they quoted Reed. But Reed did not say a single thing about a PSI being insufficient to present a claim. He did not say a single thing about creating a rule that a defendant has to personally bring that claim to the, to the Court's attention. Uh, what Reed held is that, uh, the, the claim in that case was that the, the defendant claimed that he was poorly represented, and that's it. And the Reed court said, well, he didn't include any additional allegations to explain what he meant. Um, and that analysis has since been rejected by the Illinois Supreme Court. Again, people be heirs. In 2017, you don't need to have a specific factual basis. As long as it's clear you're complaining about counsel or making a claim of ineffectiveness, that's enough. And so, and in fact, Your Honors, Reed was cited by cases that were specifically rejected, the holdings of which were specifically, specifically rejected by the Illinois Supreme Court. And, and just on the factual specificity part. On the factual specificity. Heirs is very clear on that. Right. Yeah. Yes. Um, and it is. But, but Reed isn't, hasn't been overruled on the, on the PSI. Correct. It has not. Um, but there, there's no, from my understanding of Reed, there's no PSI part of it. The, the, the Reed court, from my reading of it, doesn't say. Reed had both, right? Reed had both. Reed had a, had a language in the PSI and the... Oh yeah, and there were statements made in court as well. Correct, Your Honor. Um, and I also note too that, um, People v. Harris was also cited by People v. Ward for the same now defunct proposition, um, that a factual basis is required. And again, in Heirs, specifically mentioned Ward and rejected the analysis in that case. So the cases that Harris relies on, that part of the analysis has been rejected by the Supreme Court. The cases that cite to Harris, that case has been rejected by the Supreme Court. I think it would be a mistake, or at least implicitly the analysis has been rejected. So now trial judges, when they're reading PSIs, when they're trying to decide how to sentence someone who's been convicted, when they're looking at their background, what kind of upbringing they had, what kind of violent tendencies they had, you know, their potential for the future of their education, they also have to be looking for any hint in there that he said something nasty about his lawyer. And if he did, Crankville requires a hearing. Is that your position? Um, basically, yeah, Your Honor. I think they're required by law to read the PSI. As long as it's clear that, I'm sorry, go ahead. So who writes the PSI? The probation officer writes it. Uh-huh. Uh, and is it often the case that in the PSI there is quoted text from the defendant? No. Or is it really the summary kind of like disposition or summary statements that the probation officer gleans from the conversation? Usually it's the summary statements. And I'll note, too, that there's only really one section in the PSI where the defendant is asked for his version of the events or if he has anything to say. And so really that's probably the only section. I don't know if the, you know, he's claiming that effectiveness will come through when someone's writing, you know, the criminal background or something else like that. So it's fairly limited. It's just one section of the PSI. Judges are required by law to read it anyway. So it's not like the judge has to scour the record and try to define the defendant's intent. And also as, you know, as this, as the Illinois Supreme Court recognized in People v. Taylor, it still has to be a claim about ineffectiveness. He has to still complain about counsel's poor representation. Him just spouting off stenum, as Your Honor says, without mentioning counsel at all would not qualify for that under People v. Taylor. So really this is a fairly limited situation. And I think that especially where the entire purpose of the Crankville procedure, again, is to facilitate the spreading of record of this so that we're not dealing with this, you know, years or months later on post-conviction or appeal as we are right now trying to figure this out. That I think to say that a judge can know about a claim of ineffective assistance of counsel that the defendant made and just ignore it would go against the entire purpose of the Crankville procedure. So because it isn't the defendant him or herself that's actually writing the PSI, I mean, they're involved in the writing, of course, because they're making, they're being interviewed. Sure. Should anything else be required? I mean, what if we only had, I mean, Harris says we only have the PSI, right? We don't have anything that happens in court subsequent there too, right? Right. Should that be enough? Yes, it should be, Your Honor. That should be enough. Because it's clear from the PS, in this case, it's clear from the PSI that is the statements of the defendant who and that have, that are making the allegation of ineffective assistance of the defendant is not required to do any more than bring his or her claim to the court's attention. I know the issue is whether he's bringing it. But I think the focus of that analysis should be on whether the claim has been brought to the court's attention. Again, a person who spontaneously says something at sentencing, I don't know that it's any more clear that he's spouting off or just hoping for a lower sentence versus intending to pursue this sort of avenue for alleging counsel's ineffectiveness. I think Crankville is broad. It should encompass all those. And again, the Illinois Supreme Court has said this is not a burdensome inquiry. And this all could be resolved. If he was spouting off steam, then an inquiry would resolve that very, very quickly. So again, this is a limited situation. It's statements that are being made in a document the court is required by law to read. And so I think that under the, just under the purpose of the Crankville procedure, which is to facilitate spreading these claims of record, and where the Illinois Supreme Court has repeatedly said the defendant doesn't have to do any more than bring these claims to the court's attention. And this court found here that my client brought his claim to, my client's claim was brought to the court's attention and that it was an ineffectiveness claim, that that more than satisfies the Crankville procedure. Unless Your Honor has any other questions. Your Honor, I respectfully ask that you reconsider your decision and remand this case just for the limited purpose of a Crankville procedure. Thank you. Thank you. Mr. Spilberg. Good morning again, Your Honor. It's Assistant State's Attorney Alan Spilberg representing the people. May it please the court, counsel. The people maintain that this court's decision was correct and the petition for reviewing it should be denied. And the answer to that, the reason why, is very simple. Because contrary to what counsel said, this court did not find that the defendant had made any claims of ineffectiveness to the counsel. Instead what this court found was that the defendant complained about his attorney when speaking to the probation officer. And there's a difference between a claim and a complaint. And the reason why goes to the heart of the Crankville inquiry, the heart of the special Crankville procedures that the Illinois Supreme Court has developed. As this court knows, defendants speak to the court through their attorney. All motions, all matters are supposed to be brought through the attorney. The one exception, the one primary exception that exists within our criminal justice system is the Crankville scenario. Where a defendant who is complaining about, who is bringing a claim of ineffective assistance about his attorney at the end of the trial is saying that he received poor representation. The court is supposed to engage in a short preliminary inquiry, or as long as need be, to determine whether or not there's any potential neglect. Why? Because we do not force the defense attorney to assert his own ineffectiveness. He's permitted to do so, but he's not forced to do so. And so the reason for the Crankville inquiry, the Crankville procedure, is that when a defendant is standing up in court or is informing the court, I had bad representation, the judge has to ensure that there isn't a conflict, that there hasn't been a breakdown in that attorney-client relationship. But unless there's been that representation to the court by the defendant or by the defendant's representative, his attorney in some cases, the court can't interfere with the attorney-client relationship. And that's precisely the reason for the Taylor decision. And that's why we cite Taylor so extensively in our answer to the petition for re-hearing. Because in Taylor, what the Illinois Supreme Court held was that unless the defendant makes an express claim to the court, Crankville isn't required. Crankville isn't triggered. The problem in Taylor was he didn't say it specifically enough. It was not, it was a rambling, it wasn't a clear claim of ineffective assistance, but the point in Taylor was, though, that it was the defendant's responsibility to make an express claim. The court isn't supposed to try and divide his intent from some ambiguous statements. And that's what we have here. Well, there really wasn't a question there, though, Mr. Spelberg, right? I mean, you know, most of the time, I think we can all agree, almost all the time, you're in open court and the defendant says something. Or maybe it was prompted by something the defendant affirmatively did. We are in territory that's fairly unusual, where there's not a direct statement from defendant to judge. I'm not sure there's a Supreme Court case on Crankville that's ever addressed this. Well, Your Honor, and I think you're correct that there isn't a Supreme Court case that has ever addressed it, and the reason is because it doesn't fall within Crankville. The cases that Crankville has recognized, the ones it recognizes can be by letter, by note, by formal motion, by informal motion, by oral statement, all of those deal with the defendant making the express claim to the court in some way. He is seeking out the court's interaction. But the Supreme Court never had to grapple with what would happen if it was brought to the court's attention another way. I mean, I don't think Taylor spoke to that in any way. They weren't envisioning that. As I read Taylor, the only basis for the holding of Taylor is that the lawyer wasn't clear enough. I'm sorry, the defendant was not clear enough. You could pull language out of probably all of those Supreme Court cases where they say the defendant must make a But I don't think they intended by that to foreclose the possibility that that could come another way. They just weren't faced with that. Isn't that a? Your Honor, I agree with that, but I don't, and I'm not suggesting that they were foreclosing anything in Taylor. What I'm trying to suggest, though, is that what the court was holding in Taylor was that there must be an express claim of ineffective assistance of counsel, not simply ambiguous complaints of some sort that could be interpreted some way. And I recognize here in the PSI the defendant's complaints are more specific than they were in Taylor. I'm not claiming that at all. But what I am saying, though, is that it was the defendant's choice to bring that to the court's attention. The defendant chose not to for whatever reason. We don't know why. It's not incumbent upon the trial courts to assume that a complaint that he has made elsewhere in a prior situation should now be addressed at this point. Much like we don't require crankle inquiries prior to the end of trial, a judge shouldn't be expected to divine the defendant's intent to pursue a claim of ineffectiveness because, for all we know, the defendant may have resolved his concerns with his attorney in the interim. But what's the harm? There is no harm. And actually, I quite very much agree with your statement in the Rule 23 saying trial judges should do this out of an abundance of caution. The question is whether or not this trial court erred in refusing to do so under these circumstances. But what would be harmful about extending the rule to situations where it is brought to the trial court's attention in open court? Not that somebody thinks the lawyer was bad, but that the defendant said it. The defendant is complaining about his lawyer. He is not in court doing so to the judge, but the judge has, from some other source, and that's usually just going to be one of the two lawyers, they called his attention. Hey, look what he said in his PSI. He's complaining about his lawyer. He's blaming his lawyer. He didn't let him take the stand. He didn't call witnesses. If that information attributed to the defendant is made in open court and brought to the court's attention, why wouldn't Crankle require the trial judge to act on that? Because at that point, Your Honor, there's the risk of interfering with the attorney-client relationship. The key to Crankle is that exception to that rule that all communication is done through the attorney, through the defendant's representative, and that trial courts typically, even if they're going to find out if the defendant is choosing to testify, will ask for permission to talk to the client because of that prohibition in that regard. And so here, when something is being pursued outside of what the defendant himself is pursuing, where he didn't submit a note or a letter or a motion or a statement, even though be given the opportunity, any kind of communication between the court and the defendant at that point runs the risk of interfering with that attorney-client privilege, that attorney-client relationship. You're interfering with the attorney-client privilege if you ask the defendant based on some tip-off you got. I want to clarify. I said privilege, but I said relationship, the attorney-client relationship. We're not referring to privilege. Oh, I'm sorry. That was my mistake. No, it was my mistake, Your Honor. I'm pretty sure it was my mistake. Thank you. But so you have a – so a judge says to the defendant – I don't want to say unprompted, because this isn't a situation where the judge was unprompted. Right. Mr. Defendant, I have – it's been called to my attention, I was just reading this PSI that I'm required to read, that you are complaining about your lawyer. You haven't told me that yet, sir, but is that true? And if I'm the trial judge and I say that to a defendant, not unprompted, but from a PSI, I'm violating the relationship? I think it could be construed as interfering. Again, as I said, I very much agree with the point that in a situation like this, it could be appropriate for a judge to do it. The question is whether or not he's required to do so. And so I think that type of questioning in the absence of a clear, expressed claim of ineffective assistance could interfere with the attorney-client relationship. But I would note that in this case, Judge O'Brien tried to do that, because immediately after the arguments in aggravation and mitigation, he turned to the defendant and asked if he wanted to say yes, counsel's correct, that was the ordinary statement. Do you have anything to say in elocution? When the defendant said no, Judge O'Brien did something which I have never seen before in my experience. Are you sure? No? And clearly that was, in my mind, the only way to interpret that is he was trying to see if the defendant had anything else to say. Did he want to bring to the court's attention a complaint about his attorney? Are you saying that he conducted a preliminary inquiry? No, I'm not saying that he conducted a preliminary inquiry, because clearly he didn't. Well, but he didn't, right? I mean, a preliminary, critical inquiry is not do you have something you'd like to say to me. Right. Right? I mean, there's no written direction of exactly how a trial court does it. They'll say, tell me what you mean. How did your lawyer strike? Right. Why didn't the judge do that? I can't answer that question. If, first of all, the court was well aware of the Harris decision, which would seem to say that he's not obligated to do that. But, again, this is a de novo review, and so we're not bound by that. And I'm not suggesting that. Could one reason the defendant didn't say anything at that point is that it's been used against him as a point in aggravation? Your Honor, I actually disagree with that interpretation of the record. Certainly his statements about the case that he felt that he was wrongfully found guilty were used in aggravation because it showed a lack of remorse. But the complaints about his attorney's representation were not in any way asserted to be against the defendant and should be considered an aggravation. There was no assertion of any sort that because the defendant is complaining that he received ineffective assistance, he should get a harsher sentence. That's exactly what the prosecutor said. Your Honor, my recollection of it was that he said that it was a lack of remorse is what was stated. Yeah, lack of remorse and lack of acceptance of responsibility. Right, because the defendant's statement was I had these witnesses who would show that I'm innocent. As a prosecutor, that's all I understood what those statements were going to. It was not an assertion he's complaining about his lawyer, therefore he should be punished more harshly. Well, we might disagree on that. I mean, he's speaking in aggravation. He's saying it demonstrates an utter lack of remorse. He accuses the officers of lying. He accuses the lawyer of not letting him take the stand. He does a little mini-crankle inquiry of his own there and says, when in fact I have apologized that you didn't. Well, which was true. Which is another interesting little thing. I'm sure you're supposed to be doing it in a preliminary crankle, but since it wasn't a preliminary crankle, I guess we don't need to talk about that. And then he ends by saying he's not blaming his lawyer for the outcome of the case. He's using it against him. I mean, what is the defendant is now hearing from this prosecutor? I mean, he doesn't know, right? This defendant probably doesn't know. He's probably never heard of crankle. And he's now finding out that a statement he made to a probation officer is being used against him. Is he going to repeat that the moment that the prosecutor sits down? It would seem to be unreasonable for him to think, oh, I better keep my mouth shut. I think from Judge O'Brien's perspective, I don't think that's an unreasonable point, that he is being faced with these complaints. He's been presented with this point. He's giving the – he asks the defendant if he has anything to say. He doesn't say anything. How is the – how is Judge O'Brien supposed to know that that is the defendant's intent to pursue it any further? Given the case law, Taylor, Ayers, Harris, Cunningham, all the cases that establish that the judge is only required to engage in a crankle inquiry, required to engage in a crankle inquiry, where there is a clear and expressed claim of ineffective assistance of counsel, claim by the defendant. As this Court noted, personally brought to the attention of the Court by the defendant. So I'm sorry. So if a defense attorney says, Judge, my client wants to tell you something about my representation, he thinks I was ineffective, then it's okay for the trial judge to say to the defendant – you wouldn't consider that to be an intrusion on the relationship? No, I wouldn't. But if the prosecutor says the exact same thing, he says, Judge, I see from this PSI that he's complaining, it would be an intrusion? It could be. And the reason why is when the defense attorney is speaking, he's speaking on behalf of the defendant. He is imparting those points that the defendant points out. Okay. So what if the defense attorney says, Judge, I think I was ineffective? Well, as you noted, that's a question before the Ombudsman Court. But that shouldn't, in my mind, trigger a crankle inquiry, because the risk of forcing a defendant, a defense attorney, to argue his own ineffectiveness is not there. Because if he's willingly asserting his own ineffectiveness, there's no risk of any kind of conflict in that regard, because he is making the assertion on his own. Has the case law talked about this? This is interesting what you're arguing about, about this intrusion on the relationship. I don't think I've read anything in Crankle that's ever talked about that. I mean, when I read Crankle, you know, we talked a lot in the rule 23 about the intention of the defendant. And I think what Mr. Gerke has tried to prevail on us, and there is support for it in the case law, is that, oh, that might be one of the reasons we're doing it. But what we're really doing in Crankle is we're trying to make the whole system of justice better, right? It's not just for the defendant. I mean, defendants are going to lose a lot of strickland arguments. They're going to lose a lot more than they're going to win. Losing quickly versus losing on post-conviction, you lost either way. But for the judiciary, for the system, we're a lot better off if we can litigate ineffective assistance claims right away, right? And the judge can say, all right, we just tried this case. I remember everything that happened, and I thought counsel did a fine job, or not. Everybody's memory is fresh. We get a prompt resolution. We also get a nice record, so when it goes up to the appellate court on direct appeal, we can decide there's an appellate court. Those things really aren't about the defendant. They're about the system, which I think is what counsel would say is why we should be very liberal in construing this. If we've got a situation where the trial judge has very good reason to believe that the defendant has made complaints about counsel, he should just stop everything and say, is there something you'd like to say to me? If he doesn't have anything he wants to say, he'll say no, and we're done. But if he does, then we get this out of the way, and the whole system is improved because of it. What's wrong with what? Your Honor, I understand everything you're saying. Take one step back to your point of where is this idea of the intrusion in the attorney-client relation coming from. It's not cited in the pleadings and this petition we're hearing or in the briefs that we've read, but the case of People v. Jaco would probably be the best source for this notion. Jaco, J-O-C-K-O, from the Illinois Supreme Court from around 2009, 2010. Okay. And that was the case that held that trial courts may not and should not engage in pretrial or midtrial crankle inquiries. Where a defendant raises a complaint because of the risk of interfering with the attorney-client relationship. Instead, we're going to wait until after the trial, and at that point, if the defendant wants to bring his complaints to the court's attention, he can, and the court can address it at that point. But the reason why the court doesn't want to engage in earlier, midtrial, pretrial, crankle type of inquiries is because of that danger of interfering with the attorney-client relationship. Because we want to allow the attorney to have freedom to represent the defendant to the best of his or her ability. Absolutely. And so. But now the trial's over. Yes, Your Honor. Now the trial's over, but the attorney-client relationship continues. Yeah, but the trial's over. I mean, he lost, right? I mean, what's the big worry now? The worry is, again, just, again, protecting the system on the other side of that. I understand the points about protecting the system for the appeal, but ensuring that there is the system of allowing the defendant, the litigants, to choose which claims they are going to bring forward to the court. So that way the courts aren't directing the litigation. Instead, they are resolving the claims that are brought to it. And in a situation like this where there are complaints which appear in the PSI, but the defendant isn't choosing to actually bring that to the court's attention by any means that are available to him, the court isn't obligated to act upon that. Again, and I recognize the language, the admonition that courts can in these situations, should because of the ease of resolving this at the time. But the question is, instead, what is a judge obligated to do? Even under de novo review, what is he obligated to do at that point? And it's for that reason that we think that this Court's decision, holding that it's only a crankle-and-crease only where the defendant personally brings the claims forth. And I would just add one more point related to that. The Jackson case which counsel cited was a case where there had been an ARDC complaint. The defendant in that case, according to the decision, actively or personally stated in open court that it was true. He had made that complaint of ineffective assistance to the ARDC. He stated that to the judge after the defense attorney brought it to the court's attention. So that was an example, again, where the defendant was informed. That's in the decision, in the Jackson case. It's in the colloquy that appears. And so, which is, I think, a very different scenario than what we have here where the defendant stands there mute, despite it being presented, despite it being discussed, not choosing to bring it forth to the judge's attention. And again, so I bring this Court back to Taylor, where Taylor recognized that trial courts are not obligated to define the defendant's intent. So the distinction that you wish us to make is it's okay if the defendant raises it or it somehow appears in a document, in this case the PSI, as long as there is then also a subsequent action by the defendant or defendant's counsel. But absent both those pieces, Crankle is not triggered. If I could just clarify, Your Honor. Okay. So the fact that the defendant had made a complaint at some point through the proceedings is by itself insufficient. Instead, the defendant has to bring his complaint, whether he's done it before or not, to the attention of the court. He has to do it by formal motion, letter, note, oral statement in court. He has to do something to inform the court that he is complaining of his attorney's representation. If he doesn't do that personally, as this Court found in its Rule 23 order, then the trial court's obligation to conduct the Crankle inquiry hasn't been triggered. And I believe that the distinction that the court made in the Rule 23 order is precisely the distinction that the Supreme Court in Taylor and Ayers has anticipated and expected and that is consistent with the case law with Harris, Cunningham, and all the other cases. And for that reason, we would ask this Court to affirm its earlier decision. All right. Thank you. Thank you very much. Your Honors, my opposing counsel has basically advocated for a procedure where a defendant can ignore a claim when he knows that a pro se post-trial claim of ineffective assistance has been made. He can ignore that claim because it wasn't presented in the proper way by a pro se defendant.  Where the Crankle procedure, again, as Your Honor reiterated, where the purpose of the Crankle procedure is to fully develop these claims, to promote consideration of these claims. That's a quote from the Illinois Supreme Court. I think that goes exactly against that. Also, with respect to the point that, you know, this would harm the attorney-client relationship, you know, that wasn't really raised in any of the briefing. But even then, judges often ask, unprompted, without anything, you know, do you think your attorney did a good job in representing you? I've read many records where that happens. That's never been found. I've never seen a case finding that that kind of simple, you know, minimal inquiry is found to interfere with the attorney-client relationship. Opposing counsel referenced JACO, which, again, I don't know if that's, I think it's probably cited, but I don't know if it's fully explored in our briefs. But in that case, my recollection of that case is that the reason a pretrial Crankle inquiry couldn't be conducted is because the trial hasn't happened yet, so we don't know whether there's any prejudice to it. I don't know that it spoke to the attorney-client relationship. But if it did, I don't know if that was the thrust of that case. I'll also point out that JACO specifically held, quote, a pro se defendant is not obligated to renew claims of ineffective assistance once they are made known to the circuit court. So here, as Your Honors found, my client's pro se claims of ineffective assistance were made to the circuit. I mean, were made, I'm sorry, the circuit court was made aware of those claims. And JACO says you can't reject that. And in doing so, JACO cited People v. Moore back in 2003, where the defendant, where after the judge already knew about the defendant's claims, the state made a similar argument saying that, well, he stood mutely by and he didn't say anything, so the judge didn't have to reiterate anything. In that case, that was rejected. The court found that they had to remand for a Crankle inquiry. So where, again, the central question of the Crankle, whether a Crankle inquiry is required, I think the better practice would be to determine whether or not, A, the defendant made a pro se post-trial claim of ineffective assistance, and B, whether the judge knew about it. To say that a judge can ignore a claim because it wasn't presented in the right way goes against the whole idea of fully developing the record of these claims. So I just want to be clear. But your position is having presented this claim in the PSI, nothing more is required. Correct. Literally the language of this. You need not be concerned with statements made in court by the prosecutor in aggravation. That doesn't inform the decision at all. Well, I think if, for example, if, I don't know how else it would happen, but if the prosecutors otherwise knew about this claim and brought it up, I think that the fact that the court was made aware, I think even in that situation it would be required. But we, I think, but here it's clear that the defendant made the claim. I think that, you know, the fact that the prosecutor emphasized it and then nothing happened and then used it in aggravation at sentencing, you know, shows why my client didn't reiterate it. And, again, the exact language of the Illinois Supreme Court is that the pro-state defendant is not required to do any more than bring his or her claim to the court's attention. So, again, where the purpose of this whole procedure is to develop a record on this, to limit issues on appeal, the Illinois Supreme Court has recognized that this is not a burdensome procedure. It's really not a big deal just to say, hey, what do you mean by that? You know, you mentioned your attorney didn't do XYZ. Why didn't that happen? It would help fulfill the exact purpose of that procedure. Is there any chance of this backfiring on defendants? Is there any chance if we rule the way you say in fact patterns like this? Admittedly, these are not normal facts. These are not the everyday way this happens. Sure. That a defendant would be put in the position then to have to talk about whether he received an effective assistance because for some reason the judge has it in his or her head that he's got that, he's got such a claim. Maybe it was in the PSI. Maybe it was a vague reference in the PSI. And just out of an abundance of caution, the judge says, I'm going to do a CRICO real quick. Mr. Defendant, do you have a problem? And the defendant doesn't really know what to say, either because he's not schooled in it or he wasn't even ready for the question. And, you know, he's put on the spot. He's probably not a lawyer. He's probably not used to speaking in court on his feet extemporaneously. And he botches it, either says, no, I've got nothing to say, or, well, I don't know, my lawyer kind of messed up, I guess, but I can't really go any further than that. Has the defendant – could we – I'm just trying to think this through. Sure. Could we have a situation where the defendant is worse off for having made that record? Either on direct appeal or – Sure, sure. I don't know that he'd be any worse off than in any other situation where a pro se defendant is trying to argue about his attorney. I mean, he's not an attorney. He's raising – are we talking about maybe like waiver of forfeiture? Is that what you're – Maybe, yeah, something like that. Or just messing the record up. I mean, you know, he's – if he does something affirmatively, if he sends that notice, judge, I have something I want to say. Yeah. Well, then he's at least got some preparation. He's got something he wants to tell the judge. Sure. If something like this – let's say he was just blowing off steam in the PSI interview. Maybe he doesn't even remember doing it. Okay. Because those things don't always – there's always – there's often some gap in the sentencing. Then he's sitting there at trial, and all of a sudden the judge just says, hey, I saw something in the PSI. What do you have to say? He doesn't know what to do. And he could somehow – is there a risk that a defendant could somehow prejudice himself if we kind of force feed a crankle hearing when he didn't really do anything himself to prompt it? You see what I'm saying? I think I understand what you're saying, Your Honor. I don't – I think that if the risk we're talking about is maybe making a record that would harm him in the future, I don't think that that would present that great a risk, because I don't think that – I'm not sure that many cases have found that the crankle procedure where someone is – on the crankle increase stage, we're talking about a pro se layperson defendant can somehow waive their future constitutional rights while they're not represented by counsel. I think that that would present many constitutional concerns in that respect. And also, Your Honor, I just – I don't know how that would be that much different. When a person – even let's say somebody knows about crankle. When they're making that claim, I don't know that they know what they're talking about really anyway. They're pro se. They're laypeople. They're just trying to let the judge know that something's screwed up, and it's the judge's – once the judge knows about it, it's the judge's job to conduct an inquiry. It's not a burden to be placed on the defendant to make sure these proper procedures are followed. So unless Your Honor has any other questions. No. Your Honor, I respectfully request that you reconsider your decision and remand for a proper crankle. Okay. Thank you. Thank you both, counsel. We'll take the matter under advisement. This is a very interesting case, and it was made far more interesting and enjoyable by excellent advocacy on both sides. We really appreciate it, and we did great lawyers in here, so I wanted to make sure you knew how we felt. We'll take it under advisement, and we'll stand adjourned.